IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


TRISHA MICHELLE RUTH,

                    Plaintiff,

vs.                                    Case No. 15-1324-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.


MEMORANDUM AND ORDER

     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's
decision to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the
conclusion.  The determination of whether substantial evidence
supports the Commissioner's decision is not simply a
quantitative exercise, for evidence is not substantial if it is
overwhelmed by other evidence or if it really constitutes mere
conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).
Although the court is not to reweigh the evidence, the findings
of the Commissioner will not be mechanically accepted.  Nor will
the findings be affirmed by isolating facts and labeling them
substantial evidence, as the court must scrutinize the entire
record in determining whether the Commissioner's conclusions are
rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan.
1992).  The court should examine the record as a whole,
including whatever in the record fairly detracts from the weight
of the Commissioner's decision and, on that basis, determine if
the substantiality of the evidence test has been met.  Glenn, 21
F.3d at 984.

     The Social Security Act provides that an individual shall
be determined to be under a disability only if the claimant can
establish that they have a physical or mental impairment
expected to result in death or last for a continuous period of
twelve months which prevents the claimant from engaging in
substantial gainful activity (SGA).  The claimant's physical or
mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

3

requires the agency to consider vocational factors (the
claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other
jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th
Cir. 1993).   At step five, the burden shifts to the
Commissioner to show that the claimant can perform other work
that exists in the national economy.  Nielson, 992 F.2d at 1120;
Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The
Commissioner meets this burden if the decision is supported by
substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC).  This
RFC assessment is used to evaluate the claim at both step four
and step five.   20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g);
416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On June 20, 2014, administrative law judge (ALJ) Rhonda
Greenberg issued her decision (R. at 24-39).  Plaintiff alleges
that she has been disabled since December 28, 2012 (R. at 24).
Plaintiff is insured for disability insurance benefits through
June 30, 2014 (R. at 26).  At step one, the ALJ found that

plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 27).  At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 27).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 27). After determining plaintiff's RFC prior to January 24, 2014 (R. at 29), the ALJ found at step four that plaintiff is unable to perform any past relevant work (R. at 36).  At step five, the ALJ found that plaintiff, prior to January 24, 2014, could perform other jobs that exist in significant numbers in the national economy (R. at 37).  Therefore, the ALJ concluded that plaintiff was not disabled prior to January 24, 2014 (R. at 38-39).

The ALJ made further RFC findings for plaintiff as of January 24, 2014 (R. at 35).  As of January 24, 2014, the ALJ concluded that plaintiff cannot perform jobs that exist in sufficient numbers in the national economy (R. at 38).  The ALJ therefore found that plaintiff was disabled on January 24, 2014 (R. at 38-39).[1]

**III.  Did the ALJ err in her evaluation of the medical evidence from Dr. Goodman?**

---

[1] Plaintiff was diagnosed with pigmentary retinal dystrophy and cystoid macular degeneration of the retina in February 2014, and her vision was found to be rapidly declining (R. at 35, 555, 560).  She was considered legally blind in April 2014 (R. at 565).

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).

An opinion from an examining medical source is presumptively entitled to more weight than a doctor's opinion based on a review of the medical record.  An examining source opinion may be dismissed or discounted, of course, but that must be based on an evaluation of all of the factors set out in the cited regulations, and the ALJ must provide specific, legitimate reasons for rejecting it.  Chapo v. Astrue, 682 F.3d 1285, 1291 (10th Cir. 2012).

On December 5-7, 2013, Dr. Goodman, a licensed psychologist, performed a psychological evaluation on the plaintiff, testing her over nearly a 6 hour period over 3 days (R. at 438-444).  In his evaluation report, Dr. Goodman stated that he administered the following tests on the plaintiff:

      1.  Culture-Free Self-Esteem Inventories-
          Second Edition (CFSEI-2)
      2.  Home Version Rating Form for ADHD

    3.  DSM-IV Criteria for ADHD
    4.  Sentence Completion Test
    5.  Worry Self Assessment Scale
    6.  Fear Checklist
    7.  Depression Checklist
    8.  Screening Test for Depression
    9.  Anger Inventory
    10. Self Assessment of Anger
    11. Bipolar Checklist
    12. Warning Signs of Developing Problems
    13. Wellness Assessment-Adult
    14. Sleep Checklist

(R. at 438). Dr. Goodman stated that the results from the testing were "valid" (R. at 438). Dr. Goodman then discussed in detail the results from each of the 14 tests (R. at 438-442).

In summary, Dr. Goodman stated that plaintiff was extremely open and honest on all the testing. She did meet the criteria for ADHD: Combination Type. He found that she most likely has bipolar disorder. He found that she has a very high degree of anger present and her depression falls in the moderate to severe range overall. He found that she is functioning in the danger zone of "worry." She has a lot of racing thoughts and feels very upset at herself. Her self-esteem was found to be extremely low. His recommendations included psychotropic medications being essential for her, the need for inpatient treatment for meth dependence, and psychotherapy to deal with low self-esteem, anger, depression and relaxation and stress management training (R. at 442).

On a separate page, Dr. Goodman interpreted another test

given to the plaintiff, an MMPI-2.  He found that the test results indicated an invalid profile.  However, he stated that, despite being invalid, he found that she tried very hard to be open in her feelings, and that she is most likely self-critical and most likely gets down on herself very easily.  She most likely has strong passive-aggressive anger which if left to build up she will respond in a very impulsive manner.  She most likely has a great deal of difficulty trusting people with her feelings.  She most likely is paranoid and has severe depression.  She most likely worries a great deal and is extremely sensitive to criticism and most likely perceives negative appraisals when none is offered.  She most likely is distrustful of other people and most likely has impaired reality testing (R. at 443).  Even acknowledging that this test was invalid, Dr. Goodman opined that she most likely has Bipolar I Disorder: Depressed Type: Moderate.  She most likely has a Paranoid Personality Disorder (R. at 443).

Finally, Dr. Goodman prepared a progress note on December 5, 2013, based on a 55 minute interview with the plaintiff.  He found that she was extremely honest in her feelings, but does not want to go back into treatment.  He found her prognosis to be guarded, but found that she had a good response to treatment so far.  He stated that her homework assignment is to act versus react to situations; Dr. Goodman stated that he would see her

the next week (R. at 444).[2]

On February 13, 2014, Dr. Goodman diagnosed her with bipolar disorder, ADHD, and paranoid personality disorder (R. at 541).  He also filled out a form opining that plaintiff meets or equals a listed mental impairment, finding that she has marked difficulties in social functioning, frequent deficiencies of concentration, persistence or pace, and continual episodes of decompensation (R. at 532-537).

The ALJ briefly discussed the report from Dr. Goodman (R. at 33), and then discounts his findings based on: 1) invalid test results, 2) self-reported symptoms, 3) very limited clinical observation, and 4) because they are completely inconsistent with the longitudinal treatment record from Behavioral Health and Addiction Services, which show even when the plaintiff was admittedly struggling with substance dependence, she was moderately symptomatic and exhibited moderate functional deficit.  The ALJ stated that when she was compliant with medication and not abusing drugs, she showed mild to moderate symptomatology and functional limitations.  The ALJ therefore only accorded minimal weight to the opinions of Dr. Goodman (R. at 34-35).

First, the ALJ stated that the findings of Dr. Goodman were based on "invalid test results" (R. at 34).  However, as noted

---

[2] There is no evidence in the record that Dr. Goodman saw plaintiff after the evaluation on Dec. 5-7, 2013.

above, Dr. Goodman performed 14 tests on the plaintiff over a 3
day period and found that the results on those tests were
"valid" (R. at 438).  After a detailed discussion on the 14 test
results, Dr. Goodman found that plaintiff had ADHD and bipolar
disorder.  He found that she has a "very high degree of anger
present" and her depression falls in the moderate to severe
range overall.  He found that she is functioning in the "danger"
zone of worry (R. at 442).

On a separate report, Dr. Goodman discussed the MMPI-2
test, finding that the profile was invalid because of a high F
score.  Despite the invalid profile, Dr. Goodman stated that
plaintiff tried very hard to be open in her feelings.  Dr.
Goodman further opined that she has strong passive-aggressive
anger which, if left to build up, she will respond in a very
impulsive manner.  She most likely has a great deal of
difficulty trusting people with her feelings, she is most likely
paranoid, and has severe depression.  She most likely has
impaired reality testing (R. at 443).

The ALJ's statement that the findings of Dr. Goodman are
based on "invalid test results" is a clear misstatement of the
record.  In fact, Dr. Goodman performed 14 separate tests over a
3 day period, which he found to be valid, and formed the basis
for diagnostic findings.  On a separate report, Dr. Goodman
stated that the MMPI-2 test was invalid due to a high F score,

but further indicated, that despite being invalid, he opined she

most likely suffered from numerous mental impairments.

Second, the ALJ discounted the opinions of Dr. Goodman

because they were based on "self-reported symptoms" (R. at 34).

As the ALJ noted, Dr. Goodman performed a number of self-

reporting psychological assessments (R. at 33, 438).  However,

in the case of <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1121 (10th

Cir. 2004), the court held:

> The ALJ also improperly rejected Dr.
> Hjortsvang's opinion based upon his own
> speculative conclusion that the report was
> based only on claimant's subjective
> complaints and was "an act of courtesy to a
> patient." <u>Id</u>. The ALJ had no legal nor
> evidentiary basis for either of these
> findings. Nothing in Dr. Hjortsvang's
> reports indicates he relied only on
> claimant's subjective complaints or that his
> report was merely an act of courtesy. "In
> choosing to reject the treating physician's
> assessment, an ALJ may not make speculative
> inferences from medical reports and may
> reject a treating physician's opinion
> outright only on the basis of contradictory
> medical evidence and *not due to his or her
> own credibility judgments, speculation or
> lay opinion*." <u>McGoffin v. Barnhart</u>, 288 F.3d
> 1248, 1252 (10th Cir.2002) (quotation
> omitted; emphasis in original). And this
> court "held years ago that an ALJ's
> assertion that a family doctor naturally
> advocates his patient's cause is not a good
> reason to reject his opinion as a treating
> physician." <u>Id</u>. at 1253.

Subsequently, in the case of <u>Victory v. Barnhart</u>, 121 Fed. Appx.

819 (10th Cir. Feb. 4, 2005), the court held:

> The ALJ's finding that Dr. Covington's
> opinion was based on claimant's own
> subjective report of her symptoms
> impermissibly rests on his speculative,
> unsupported assumption. See Langley, 373
> F.3d at 1121 (holding that ALJ may not
> reject a treating physician's opinion based
> on speculation). We find no support in the
> record for the ALJ's conclusion. Nothing in
> Dr. Covington's report indicates that he
> based his opinion on claimant's subjective
> complaints, and the ALJ's finding ignores
> all of Dr. Covington's examinations, medical
> tests, and reports. Indeed, the ALJ's
> discussion of Dr. Covington omits entirely
> his March 22, 2001 examination and report.
> His April 3, 2001 statement might well have
> been based on his recent first-hand
> examination and observation of claimant
> during this examination, performed less than
> two weeks earlier, rather than on claimant's
> subjective complaints, as the ALJ
> speculated. See Morales v. Apfel, 225 F.3d
> 310, 317 (3d Cir.2000) (noting that the
> treating physician's opinion may "reflect
> expert judgment based on a continuing
> observation of the patient's condition over
> a prolonged period of time").

121 Fed. Appx. at 823-824.

As Langley makes clear, the ALJ must have a legal or

evidentiary basis for asserting that a medical source report was

based only on plaintiff's subjective complaints or self-reported

symptoms.  However, the ALJ did not cite to a legal or

evidentiary basis for his assertion that the opinions of Dr.

Goodman were solely or primarily based on plaintiff's self-

reported symptoms.  In fact, Dr. Goodman performed 14 valid

tests on plaintiff over a 6 hour period over 3 days; he also

observed and interviewed the plaintiff, and made detailed findings regarding the results of each of the 14 tests (R. at 438-442, 444).  As the court stated in Victory, Dr. Goodman's assessment might well have been based on his first-hand examination and observation of the plaintiff during the psychiatric evaluation/mental status examination on the day of the assessment and on earlier occasions, rather than relying only on self-reported symptoms, as the ALJ speculated.

Furthermore, the practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements.  Thomas v. Barnhart, 147 Fed. Appx. 755, 759-760 (10th Cir. Sept. 2, 2005); Miranda v. Barnhart, 205 Fed. Appx. 638, 641 (10th Cir. Aug. 11, 2005).  A psychological opinion may rest either on observed signs and symptoms or on psychological tests.  Langley v. Barnhart, 373 F.3d 1116, 1122 (10th Cir. 2004); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  The ALJ cannot reject a psychologist's opinion for the reason that it was based on a claimant's responses because such rejection impermissibly substitutes the ALJ's judgment for that of the psychologist.  It is not the ALJ's prerogative to substitute his own judgment for that of the psychologist. Thomas, 147 Fed. Appx. at 760; Miranda, 205 Fed. Appx. at 641; see McCune v. Colvin, Case No. 13-1207-SAC (D. Kan. Sept. 23, 2014; Doc. 28 at 9-12); Reeder v. Colvin, Case No. 13-1201-SAC

13

(D. Kan. Sept. 11, 2014; Doc. 22 at 11-13); Glaze v. Colvin,
Case No. 13-2129-SAC (D. Kan. Aug. 6, 2014; Doc. 15 at 8-11);
Price v. Colvin, Case No. 13-1052-SAC (D. Kan. March 11, 2014;
Doc. 15 at 14-15); Stamps v. Astrue, Case No. 12-1100-SAC (D.
Kan. Feb. 20, 2013; Doc. 18 at 9-11).   The ALJ in the case
before the court erred by impermissibly judging a medical
professional on the assessment of medical data, in this case the
self-reporting by plaintiff.   See Miranda, 205 Fed. Appx. at
641.

     Third, the ALJ discounted the opinions of Dr. Goodman
because of "very limited clinical observation" (R. at 34).
Although the records show that Dr. Goodman only saw her over a 3
day period, it should be noted that the evaluation took place
for 6 hours and 45 minutes in those 3 days (R. at 438, 444).
The ALJ clearly gave greater weight to the treatment records
from Behavioral Health and Addiction Services in light of the
fact that he discounted the opinions of Dr. Goodman, in part,
because the ALJ concluded that Dr. Goodman's findings were found
to be completely inconsistent with the treatment records.
However, in reviewing the treatment records from Behavioral
Health and Addiction Services, although those records show 12
sessions from June 25, 2012 through February 11, 2014, the time

14

spent with plaintiff in 8 of the 12 sessions was only 166
minutes, or less than 3 hours (R. at 379-387, 426-431, 522-531).[3]

As set forth above, the ALJ clearly erred in two of the
four reasons set forth by the ALJ in discounting the opinions of
Dr. Goodman.  Furthermore, there is some question regarding the
discounting of Dr. Goodman's opinion because of very limited
clinical observation, and the greater weight accorded to the
treatment records, in light of the time Dr. Goodman spent in his
evaluation of the plaintiff as compared to the time spent with
the plaintiff according to the treatment records.  For these
reasons, the court finds that substantial evidence does not
support the reasons for discounting the opinions of Dr. Goodman.
Therefore, this case shall be remanded in order for the ALJ to
properly evaluate the evidence regarding plaintiff's mental
impairments and limitations from December 28, 2012 until January
24, 2014 (when she was found to be disabled), including the
report and opinions of Dr. Goodman, and make new RFC findings
after properly considering that evidence.[4]

---

[3] In four of those sessions, Aug. 29, 2012, Oct. 1, 2012, Nov. 8, 2012 and April 22, 2013, the time period of the session is not recorded (R. at 379-387, 426-431, 522-531).

[4] Plaintiff also pointed out that Dr. Goodman, a psychologist, is an acceptable medical source.  Plaintiff contends that the treatment providers were not acceptable medical sources (Doc. 15 at 4); this was not disputed by defendant in her brief (Doc. 18 at 7).  The ALJ did not mention that the treatment sources were not acceptable medical sources. On remand, these opinions should be considered in accordance with SSR 06-03p, which states that the fact that an opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because "acceptable medical sources" are the most qualified health care professionals.  However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source.  SSR 06-03p, 2006 WL 2329939 at *5.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 29th day of December 2016, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge